322-0471-WC Harrah's Illinois Corporation Appellant by Michael Chalkraft v. Illinois Workers' Compensation Comm'n Margaret Webb Appley by Mark Weisberg Mr. Chalkraft, you may proceed. Thank you, Your Honor. May it please the Court, Justices, Counsel, my name is Mike Chalkraft and I represent the Appellant, Harrah's Illinois Corporation in this matter. Your Honor, the controlling case, I apologize. Your Honor, the controlling case addressing the issue of BAR is Cisco's Food Services as outlined in my brief. Your Honor, this appeal is being taken and we are requesting that, or Your Honors, we are requesting that the original Commission decision of March 3, 2017 be reinstated and that the Circuit Court order of December 1, 2017 be reversed, thereby subsequently vacating all subsequent orders and decisions. It is long held that any factual determinations made by an administrative agency cannot be set aside if there is any evidence in support of it. The Appellate Court must defer to the resolution of conflicts of testimony and the evidence rendered by the administrative agency. The Circuit Court failed to apply the appropriate standard when it usurped the Commission's authority by finding that the original Commission decision was against the manifest weight of the employee to re-litigate the claim. It failed to acknowledge that the appropriate standard is whether or not there is anything to support the underlying decision by the Commission. It is well established that the testimony by the employee at the time was inconsistent with timelines and mechanism of injury for her cause of action. While not dispositive on the issue, the testimony at trial was that this was an acute injury that took place. Ultimately, it was amended prior to trial. It was amended that date of loss was July 9, 2017 to comport with the medical records. However, the medical records do not corroborate the petitioner's testimony. In effect, what had happened was, and what the medical records that were memorialized and taken contemporaneously with the July 9, 2017 emergency room visit indicates that she went to the emergency room with chest pain, shortness of breath, and she also, and I do concede this point, she made complaints of back pain. Now, what the Commission relied upon and what we believe the Circuit Court failed to take into account when the nature of any existing lower back pain, the dates, and one record on July 9, 2017 said lower back pain began approximately three days earlier. The whole purpose for going to the emergency room on July 9, 2017 was essentially she was having a heart attack, or she was having chest pains, and they were treating her for a heart attack. We know that there was no concern for any complaint of a lower back injury because the consulting report noted a complaint of lower back pain but noted that she was pain-free on the day of the consultation and submitted her to a hospital. Now, it's nine years later when this proceeds to arbitration that the employee says that this is the result of an acute injury from lifting dishes on July 9, 2017, and that's a myopic interpretation of the case as a whole, including the contemporaneous medical records, and what the arbitrator did and what the Commission affirmed was they looked at the totality of the circumstances, they took the record as a whole, and they determined that there was not a, the petitioner did not sustain her, excuse me, the employee did not sustain her in the course of her employment. Now, this is similar, as I indicated, this is the case that is controlling is the 2017 Cisco Food Services case, and I believe if my notes are correct, that was authored by Justice Hoffman, and rendering a decision by the court, it similarly to this one, to this case, there was a circuit court opinion that overturned and provided no, well, it did not appear that there was any deference provided to the Commission, and in reversing the Commission's decision, and ultimately, the appellate court found that that was improper and struck that decision and reinstated the Commission's decision. In that case, it was in favor of the employee, but otherwise, the facts and procedural background are almost on all fours consistent with the case, the current case before honors. So what was the basis, the primary basis, I mean, sum up for me, why the Commission found there was not an accident that was attributable to her employment? Because your honor, the medical records were inconsistent with the history that she provided at trial. At trial, she indicated that this was a lower back case, and that it was the result of, well, at trial, she provided a testimony that I guess could be inferred as either a repetitive type injury or an acute injury. There was a discussion prior to the hearing, or excuse me, there was an objection discussion during the hearing, and I believe counsel confirmed on the record that this was an acute injury. So, proceeded at trial that this work accident was a lower back injury as a result of lifting heavy dishes and associated work as a waitstaff member. How significant was the dates and timing to the Commission's finding? How significant was the testimony pertaining to when this occurred? So, the, in terms of the Commission's, they put, I don't think they indicated the level of significance, but they noted, it was significant enough that they noted that there was inconsistencies with the medical records and the history provided a testimony. So, I would. So, the history that was given by the claimant was that it occurred at different times, as far as when the back pain. Can you tell me, my understanding of my reading was that there were at least two amendments to the petition, as far as dates of the accident. Is that true? That is correct. The, I believe the original application was July 6, 2017. Three months later, it was amended to July 7, 2017. And then on the day of the trial, when the application was admitted, counsel made an oral motion to amend it to July 9, 2017. So, those are the reported dates of the acute incident, the incident that caused the injury? Six, seven, and ninth? Is that right? Six, seventh, and ninth were the dates that were alleged. Correct. Yes. But it went to, to answer your question, that's correct, Justice. They proceeded to trial on a date of loss or date of accident of July 9, 2017. So, did the commission's original or initial decision hinge on credibility of the witness of the claimant's rendition of the events then? Uh, certainly. The, the commission, uh, uh, found that the, uh, the testimony could not be corroborated, uh, based off the medical records and the history provided, uh, in the ER, uh, for the specific mechanism that was testified to at trial. And it was, uh, I would, I, I would say that, uh, that was significant enough for the commission to, uh, to, uh, while not dispositive, it was one of the factors taking the, all of the medical records and the testimony in its totality. It was one of the factors that the commission relied upon and stating that, uh, uh, the, uh, the employee did not sustain her burden of, uh, proof. Did the commission point out that there was testimony, um, that she had reported it in one, uh, uh, one medical provider that she, uh, reported that the injury occurred while she was sitting at work and then another when she was standing, lifting, uh, heavy items, plates and stuff, so forth? Uh, uh, yes, your honor. One, one of the, uh, one of the findings of fact that the commission relied upon was, uh, a history that, uh, and, and I could hold up, I believe it was that, uh, she had a sudden onset of pain in her chest that happened at work while sitting down. Uh, then further in the records, uh, the, uh, uh, the history, I believe relates back to either three days prior or in the course that it reported a history that, uh, of what her tasks are at work, lifting heavy objects. Uh, so the, uh, and, and it's, I believe it was the nurse's case notes that gave one history of shortness of breath and chest pain. The physician's, uh, history gave a slightly, uh, more elaborate, uh, report, uh, physician's documentation record of July 9th, uh, 2007. Uh, chest pain, uh, that is located primarily in its substernal area, uh, described as sharp. Uh, uh, let's see, uh, there was, I'm sorry, I'm trying to find, there was a specific, uh, note that said she was sitting when she had the immediate onset of pain. I believe that was, and that was chest pain. Uh, that's, that's, uh, chest pain. That's, that's correct, your honor. And, uh, I believe the testimony was that, I'm sorry, I, I found it. It's, uh, the record it's C599, uh, and, uh, C600. This was the report of consultation, uh, that said that, uh, 47-year-old female who's working at Harrah's yesterday when she developed retrosternal chest pressure at approximately 11 a.m. She was sitting at work when this occurred. The day before, when she was at work, she lifted heavy plates and experienced significant back pain, and it was difficult for her to sleep with the back pain. Uh, he, he went on to report that, uh, she presented with atypical chest discomfort while at work, but was currently pain-free, and then ordered a stress test. What date was that note made? I apologize, your honor, uh, just- What was the date of that note? That was dated, uh, it, that was dated, so, uh, that was dated, I believe, July, uh, 10, 2007. So, the consultation, or excuse me, it was, it was dictated and transcribed July 10, 2007. So, the, the next day, uh, whether it was taken, uh, I, I would actually have, I, I don't know for sure if it was- Well, it's contained in the emergency room record, isn't it? That specific history that I just, uh, uh, recited was contained, uh, in the emergency room records titled, uh, report of consultation. I, I do not know, for your honor, if that consultation took place on July 10th or July 9th. The record was created on July 10th, but the, uh, but she was, the petitioner was at the emergency room, uh, for two days. Essentially, your honors, the, the issue here, and what's, uh, I believe, uh, really will be dispositive on, uh, the court's ruling is whether or not the appropriate deference was provided to the commission by the circuit court. Uh, your honor, it's, it's the appellant's contention and the facts and records support that, uh, the, the circuit court's, uh, judge improperly, uh, made inferences and, and, and made a decision based off of a position that the, the trial court or circuit court did not have the ability to, to, uh, to conduct, uh, an assessment that they did not have the ability to conduct. It wasn't whether or not the circuit court, uh, agreed with the decision or, uh, uh, signed off on the decision, the appropriate standards, whether or not there is any support for the commission's decision and a plane, your time has expired. You will have time on reply. Thank you, your honor. I apologize. I have it in gallery and I forgot to thank you. Okay. You may respond. May it please the court. My name is Mark Weisberg and I represent Margaret Webb, the petitioner and defendant appellee. The first issue in any case is jurisdiction. It's our contention that the post remand circuit court lacked jurisdiction as no notice of that appeal was properly sent to me or my client. This argument is laid out in the motion to quash filed with the circuit court. The circuit court denied my motion, uh, and went on to rule in our favor. We raised these same issues before this honorable court, and I'd be happy to go into those arguments. Uh, but assuming are you endo that this court finds that there is in fact jurisdiction, I'll address the issues surrounding manifest weight because that is then the next issue we have to look at. The question is whether there was any evidence to support the arbitrator's decision and the commission's affirmation of that decision. In reviewing the record, I hope this court has reached the same conclusion I do every time I go through it. All of the evidence, every bit of it supports the conclusion opposite to the one made by the arbitrator. All of the evidence supports a finding that my client injured her back on 797, the date of accident while lifting heavy plates at work. It's worth recalling that this accident happened in a casino. There are cameras everywhere. One would think if the employer seriously doubted that the accident happened, they would check the video and submit anything helpful to their case into evidence, but none was offered. So the only conclusion we can draw from that is that nothing on that video was helpful to them. So the testimony as to how the accident happened comes solely from Ms. Webb and is unrebutted. The accident was reported to Ms. Webb's supervisor, Terry. Well, it's unrebutted in so much as, um, whether she injured her back, but doesn't she you know, for argument's sake, doesn't she rebut her own testimony by changing the dates of the accident? She does not change, excuse me, she does not change the dates of her accident. When the case was initially filed, as with any workers' comp case, the client comes in, gives us their best recollection of when things happened, and we file the case. We don't have any medical records at that point. We don't have anything to look at. So we file the case to get it on file. Then as medical records come in, we can look at those to determine, A, is this a repetitive stress injury or a specific incident? Which in this case, it's kind of on the border line, but we went with a specific incident. And B, what's the date? Part of the problem with that is that the ER records are all over the place because she was there overnight. So sometimes there are notations saying she was injured at work today, but what's today? Are they talking about today when she came in or today, the next day when they're dictating the note? So the ER records become unclear. It was at the date of trial, upon sitting down with her, sitting down with the records, and going through them, that I was able to determine the correct date of accident was 7-9-7. And so that was the date that we asked the arbitrator to amend to. However, had we not done so, had we stuck with the original date that we filed, it doesn't matter. The arbitrator is able to find the date of accident based on the evidence, not based on what I file. I wasn't there. It's based on the evidence. All of the evidence, once you go through it, once you comb through it and look at it carefully, points to 7-9-7 as the date that at work she was lifting heavy plates and felt an increase in her back pain. She then went to the ER. She also had chest pain, and so they examined her for that. When you go through with that in mind and read the ER records, they then make sense. Everything lines up then. So no, she didn't change her story as indicated by the arbitrator and respondent. She had one consistent story. I was at work. I was lifting plates. I felt back pain, and I went to the ER. We then turned to records to flesh that out and see what exactly happened. As to the supervisor, Terry responded... Let me stop you for one moment. I know that you said that you guys amended it to July 7th, amended it from the original reported date of July 6th, but then you also listed it as July 9th. The day of trial to July 9th, is that correct? That's correct. On the date of trial, having sat down with the client, gone through the history with her, showing her the medical records, and clarifying how long was she at the ER so that we can clarify when they're saying when things happened, what day are they talking about? As with all ER records, they are not first time you look at them. The ER is not a record taking. They're not court reporters. They're trying to help someone who is at this point, potentially having a heart attack, potentially facing a fatal incident. Their focus is on helping her. Secondary to that, they're taking down notes as they have time. Those notes are not always abundantly clear. That doesn't mean that someone doesn't get their workers' comp benefits. That doesn't mean we take away their rights under the Workers' Compensation Act because emergency rooms are bad at taking records. If that were the case, no one would be getting benefits because emergency rooms are always going to be bad at that. We don't expect more from them than what they're doing. They're saving lives. That's their job. My job is to come back after the fact and make sense of all these scribbled notes and try and present them in a way that I was able to go through them with the client before the trial began and clarify that. But even had I not done so, even if I still had the wrong date, that doesn't change her rights under the Act because the fact that I make a mistake or I misread the ER records doesn't change the facts. The facts are in the records. The arbitrator's job... I don't know what that was, but the arbitrator's job is to figure out what the date of accident was and base that on the evidence. Here, a lot of attention is given to two things that really have nothing to do with anything. One is the heart condition. Everyone wants to talk about the heart condition. Well, she was sitting down when her heart started bothering her. What date was that? It doesn't... I don't know who that's coming from. Michael is muted, so it's someone else. But in any event, I'm sorry. That throws me off my game every time it happens. But my point is the evidence is the evidence. We have to look at the evidence. We have to look at the medical records. If the medical records tell us a story, then we have to follow that story and figure out what it's telling us. What it's telling us is that on 7-9-7, she was lifting heavy plates at work and felt pain in her back, and later that day went to the ER, was there overnight. At the ER, they initially suspected that there was chest pain and therefore a heart attack, but they also noted back pain. They noted it throughout her stay at the ER. It's all over those ER records. There's nothing inconsistent here. There are times when we have trouble figuring out what the ER person is talking about or why they're saying this date or that date or what date they're talking about, and we have to look closely to figure that out. But I've highlighted in my brief, for example, the report of consultation on page 22 of my brief. I copied that because it's so important. History of present illness. This is a 47-year-old female, etc., etc. The day before when she was at work, she lifted heavy plates and experienced significant back pain, and it was difficult for her to sleep with significant back pain. Now that note is dictated on 7-10-7. So when they say the day before, presumably that means 7-9-7. That's consistent with what she testified to, and it gives the exact same history of lifting heavy plates. There's no other history. There's nothing to contradict that anywhere in these records. Everything lines up. If you look at the 7-9-7 on the date of accident, Silver Cross Hospital, on page 20 of my brief, I've copied this. It says CP, chest pain, back pain, and SOB, shortness of breath. They note the back pain on that very day as they're treating her for the chest pain and the shortness of breath. They also are noting the back pain. Everything lines up, every single piece of evidence. Everything here is 100% consistent. There's nothing to rebut it. There's nothing to contradict it other than just people saying, well, wait, you first filed it for this date, and then you filed it for that date. That's on me. That's just a client comes in and tells me a story, and I make the best guess possible on what the date of accident was. And then I wait for the records to come in and a chance to go over them with the client to clarify when they are. Perhaps I should have done that earlier than I did, but I did it before the record. There was no objection to changing to the 7-9-7 date. No objection because respondents saw the same thing we saw. Every medical opinion, every treatment note that states a history of accident consistently notes an accident at work. The more detailed records note that it occurred while lifting plates at work, which is consistent with Ms. Webb's testimony. Even respondent section 12 doctor, Dr. Lieber admits that she was injured at work while lifting plates, although he seems to think that they were light and that the aggravation of her back condition only lasted for two weeks. The medical records obviously show that they lasted well beyond two weeks and that she still suffers from the back pain and is severely limited by it. Dr. Lieber also offered, quote, I don't think she should have been employed in the first place, end quote. This was due, according to him, to her weight and the condition of her back, which made an injury more likely. But as we know, the employer must take the employee as they find her. The fact that they pushed her past her light duty restrictions certainly did not help matters. The fact that they made her work full duty when she was limited to light duty was a huge mistake on their part. Dr. Lieber also said, from the standpoint of is this lady employable or is she a mistake waiting to happen, based upon her size and the type of work that she does, from that standpoint, sure. In other words, he's saying this is a camel waiting for a straw to break its back. And we know that a straw did break this camel's back on the date of accident. Everything points to that. Everything. I'm not saying the majority of the evidence. I'm not saying 99.9%. All of it. Respondent failed to do her own job search. And despite her best efforts, she was unable to find employment, supporting a finding of odd lot permanent total disability. The vocational rehabilitation counselor she met with at her own expense opined that at best the prognosis for placement was fair. That was before the actual attempt to find work, which, as we now know, was not successful. And before her back condition became even more painful and debilitating. It's clear from the evidence that Ms. Webb is unable to work. Even activities of daily living are challenging for her. And that's exactly what their doctor, Dr. Lieber said. It's kind of shocking that he went as far as he did, but he basically supports it being a permanent and total disability in addition to supporting that an accident happened as described. I see I'm short on time. So let me hurry up here and get to the end of my argument. Before you do, can you point to me in your brief where you raise the jurisdiction? Yeah, jurisdiction. It's at the end of my argument. I raise it. Well, you didn't raise it at all. You attached a copy of your motion to dismiss at the circuit court. Where's the argument section? The argument is brought in by reference from the motion to quash. Counselor, you have no argument section whatever in this brief on the issue of jurisdiction. You merely attached a copy of your motion to quash and left it for us to research it because I'm sure you're well aware that we have an obligation to examine the circuit court's jurisdiction. But when you do a thing like that, don't you think you could at least do us the courtesy of putting it in the argument section of your brief? I suppose I should have done that, Your Honor. Yeah, I suppose you should. I apologize for that. I feel like I would have been cutting and pasting the motion to quash into the brief and making it longer than the rules require. I guess that's why I did it the way I did. But on further reflection, I think you're correct. That would have been the better way to handle it. If you want me to go into more detail on the jurisdiction argument, I'm happy to. It really relates to the convoluted way that we file these appeals. For good or for bad, a lot of people get caught in not 100% complying with those rules, and the court loses jurisdiction when that happens. In any event, the circuit court did do a thorough analysis of the facts in this case and agreed that the decision below was against the manifest weight of the evidence. We've therefore asked this honorable court to reverse the original decision, affirm the circuit court decision, grant the requested benefits, and put this matter to rest. Thank you. Thank you, counsel. Mr. Shawcraft, you may reply. Thank you, your honor. I just want to address a couple of things that were brought up in counsel's arguments. In terms of whether or not, to the extent why the employer didn't provide witnesses or video to essentially prove a negative, I think that sort of speaks for itself, but I would just note that that's essentially burden shifting. Obviously, we want to amount to a full and firm defense, and we believe that based off of the inconsistent medical records or history in the medical records, and I go back to my prosecutor days where I think this could potentially be right before a motioned to a directive verdict finding, and so no evidence would be required. However, that's neither here nor there, so let me move past that. Counsel also said that it's the arbitrator's job to determine the date of accident, but the arbitrator couldn't determine the date of accident. The petitioner couldn't determine the date of accident. There's three applications with three different dates of accidents confirming that the target was moving, and that's corroborated by the ER medical records that have, on one hand, showing that her onset of injuries were when she was sitting down at work and started having chest pains, and any injury to her back might have happened that day or three prior. So if we're not able to clarify that, it's not our burden of proof, and the arbitrator took that into account, and the commission affirmed that. The case law is right on point, Your Honor, that given the deference to the commission as sufficient evidence on record to support the underlying decision, and therefore it's appropriate that the original circuit court decision of December 1st, 2017 be set aside, and I would note that also mentioned in the Cisco case, one of the things, and in this type of situation, it's not only what is the standard of review, but if you're reviewing a circuit court decision, which one do you look at? In this situation, it's the original circuit court decision, and it's, my prosecutor days are coming back. I want to say it's the fruit of the poisonous tree, and I know that's not innocuous, but it's because of the flawed that came from that. It's flawed, and the only way to preserve the independence and deference of the administrative agency and the commission is to adhere to the commission's findings and reinstate the March 7th, or excuse me, March 3rd, 2017 decision. With that, if there's any questions, I would be happy to answer. Otherwise, I rest. Any questions from the court? Okay. Well, thank you, counsel, both, for your arguments in this matter this afternoon. It will be taken under